**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
DETROIT, MICHIGAN**

Yony Javier Zelaya Mendez,

              Petitioner,

v.

KRISTI NOEM, Secretary, U.S. Department     Case No.
of Homeland Security; TODD LYONS,           Hon. Judge:
Acting Director, U.S. Immigration and Customs   Mag. Judge:
Enforcement; KEVIN RAYCRAFT, Acting
Field Office Director, Detroit Immigration
and Customs Enforcement; PAM BONDI,
U.S. Attorney General, U.S. Department of Justice,

              Respondents.
_____/

**PETITION FOR
WRIT OF HABEAS CORPUS**

1

Petitioner, Yony Javier Zeleya Mendez (Yony), through counsel files this Petition for Writ of Habeas Corpus and respectfully requests that this Court issue a Writ of Habeas Corpus. In support, the Petitioner states:

## I.  INTRODUCTION

1.  The Petitioner, by and through undersigned counsel, hereby files this Petition for a Writ of Habeas Corpus in order to secure his release from unlawful detention.

2.  The Respondents detained Yony without prior notice or cause as he was attending an asylum interview at the Bethpage, New York asylum office on August 13, 2025.  He has remained detained to date.

3.  The Petitioner has been granted Cancellation of Removal which will allow him to obtain lawful permanent residence in the U.S.

4.  The continuing detention of Yony is not only unlawful but punitive.  He has won his case in immigration court and is now allowed to become a permanent resident when it becomes available.

5.  ICE detention is indistinguishable from prison," and "[a] majority of people in ICE detention have no criminal record." Tom Dreisbach, Government's Own Experts Found "Barbaric" and "Negligent" Conditions in ICE Detention, NPR News (Aug. 16, 2023),

https://www.npr.org/2023/08/16/1190767610/icedetention-immigration-government-inspectors-barbaric-negligent-conditions#:~:text=In%20examining%20more%20than%20two,problems%20that%2C%20in%20some%20cases

6.  Consistent with a new DHS policy issued on July 8, 2025, (July 8th ICE Guidance) instructing all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without admission or inspection—to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible for a bond reconsideration before an immigration judge.  The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

7.  Similarly, on September 5, 2025, the Board of Immigration Appeals (BIA or Board) issued a precedent decision, binding on all immigration judges, holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. See *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and, therefore, ineligible to be released on bond by an immigration judge.

8.  Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act of 1952 (INA). INA § 1225(b)(2)(A) does not

3

apply to individuals like Petitioner who previously entered and have resided in the United States for over two decades. Instead, such individuals are subject to a different statute, INA § 1226(a), that allows for review by an immigration judge who can decide whether to release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without admitted or paroled. The Respondents' actions are not only contrary to law and

unconstitutional but have also inflicted extreme emotional distress on Yony, and his minor U.S. citizen children.  Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

9.   Accordingly, Petitioner seeks a writ of habeas corpus requiring that he be released within three days.

## II.    JURISDICTION

10. This Court has habeas corpus jurisdiction  pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (original jurisdiction) 28 U.S.C. §2201, 28 U.S.C. §2241 et seq., Art. I § 9, cl. 2 of the United States Constitution (Suspension Clause), 28 U.S.C. § 1343; 28 U.S.C. § 1361; and 5 U.S.C. § 702, and common law.

11.  This action arises under the Fourth and Fifth Amendments of the

United States Constitution and  the Immigration and Nationality Act (INA).

12. Federal district courts have jurisdiction to hear habeas claims by noncitizens challenging the lawfulness or constitutionality of DHS conduct. Federal courts are not stripped of jurisdiction under 8 U.S.C. § 1252. *See* e.g., *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

13. This Court has jurisdiction under the Suspension Clause to review the actions of the executive branch's enforcement of the immigration laws if those actions violate the Constitution by depriving Petitioner of due process or other constitutional rights. Compare Suspension Clause with 8 U.S.C. § 1252(g); see also *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). The Suspension Clause protects the right to the writ of habeas corpus where, as here, no adequate or effective alternative remedy exists. See *Boumediene v. Bush*, 553 U.S. 723 (2008).

### III.   VENUE

14. Venue lies in the Eastern District of Michigan, the judicial district in which the ICE Field Office Director is located. See *Roman v. Ashcroft*, 340 F.3d 314, 319-21 (6th Cir. 2003).

15. The Petitioner is in the custody of Respondent, Detroit Immigration and Customs Enforcement, (ICE – Detroit) The Petitioner is under the direct control of the Respondents and their agents.

5

## IV.    PARTIES

16. Yony is a national of Honduras. He is currently detained by Respondent ICE – Det in the North Lakes Detention facility in Baldwin, Michigan.

17.  Defendant, Kristi Noem is the Secretary of the U.S. Department of Homeland Security (DHS). She is generally charged with enforcement of the Immigration and Nationality Act and is further authorized to delegate such powers and authority to subordinate employees of the DHS and its various divisions. 8 USC §1103(a).   She is being sued in her official capacity.

18. Defendant Todd Lyons is the Acting Director of Immigration and Customs Enforcement (ICE) and is responsible for the administration of the detention and removal of aliens in the United States. He is being sued in his official capacity.

19. Defendant Kevin Raycraft is the Acting Director of the Detroit Field Office of the Immigration and Customs Enforcement (ICE - Det)  He is responsible for the detention and removal of aliens within the Detroit District.  He is being sued in his official capacity.

20. Pam Bondi is the Attorney General of the United States.  She is Responsible for the enforcement of the immigration laws which include the immigration courts.  She is being sued in her official capacity.

## V.    FACTS

21.  Yony entered the United States on or about 2004.  He has two U.S. citizen minor children.

22. On October 9, 2025, Immigration Judge Hansen at the Detroit Immigration Court granted him Cancellation of Removal for Non-Permanent Residents.[1]  See, INA § 240A(b)(1)  After being granted this relief, the person is eligible to adjust to permanent residence once a card is available.[2] (Ex. 1 – Order of the Immigration Judge granting Cancellation of Removal).

23. Yet, despite winning his immigration case, Yony is still detained by ICE – Detroit at North Lake Processing Center in Baldwin, Michigan.  This ICE Processing Center is managed by GEO, a private prison company.

https://www.geogroup.com/about-us/who-we-are/

24. Yony has been unlawfully detained for over 100 days to date without an opportunity to be released due to the arbitrary and unlawful actions of the Respondents.

25. Additionally, the U.S. District Court for Central District of California has certified a class which we believe that the Petitioner is a member. See, *Lazaro Maldonado Bautista et. al. v. Ernesto Santacruz, Jr, et,al*, 5:25-cv-01873-SSS-

---

[1] An alien who is inadmissible or deportable from the United States is eligible for cancellation of removal and adjustment of status to that of a lawful permanent resident if he: (a) has been continuously physically present in the United States for not less than ten years immediately preceding the date of such application; (b) has been a person of good moral character during that ten-year period; (c) has not been convicted of an offense under INA §§ 212(a)(2), 237(a)(2), or 237(a)(3)

[2] The law sets an annual limit on approvals of cancellation of removal applications. Immigration judges across the United States can approve a total of only 10,000 each year.

BFM, (CDC Nov. 25, 2025) (*Bautista v. Santacruz*) (Ex. 2 – Order)

26. The Petitioner is part of the Bond Eligible Class which includes "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. §1226(c), §1225(b)(1) or §1231 at the time the Department of Homeland Security makes an initial custody determination." *Baustista v. Santacruz*, Page ID 1447 and 1460. In that order the Court found that class members are not subject to mandatory detention and are entitled to a bond hearing. *Id*. at PAGEID1458.

27. Yony has been in the United States for 21 years.  He entered the U.S. at that time without inspection and he was not apprehended upon arrival.  Therefore, he is a class member.

## VI.    APPLICABLE LAW

28. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

29. First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. See 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, see 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention,

8

see 8 U.S.C. § 1226(c).

30. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

31. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings. See 8 U.S.C. § 1231(a)–(b).

32. This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

33. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) and was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

34.  8 U.S.C. §1225(a)] Inspection.-- 235(a)(1) [1225(a)(1)] Aliens treated as applicants for admission.--An alien present in the United States who has not been admitted or **who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this Act an applicant for admission**.  (Emphasis added). See also, *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (explaining that 8 U.S.C.§ 1225(b)(2)'s mandatory detention scheme applies to noncitizens "seeking

9

admission into the United States.")

35. 8 U.S.C. §1225(b)(1) applies only to certain aliens who are inadmissible into the United States because they either lack valid entry documents or have attempted to procure their admission through fraud or misrepresentation. The statute generally permits the government to summarily remove those aliens if they are arriving in the United States. This is otherwise known as expedited removal. The statute also authorizes, but does not require, the government to apply this procedure to aliens who are inadmissible on the same grounds if they have been physically present in the country for less than two years.

36. A warrant is not required for an arrest pursuant to 8 U.S.C. §1225.  This section grants immigration officers the power to detain aliens who do not appear clearly entitled to admission, allowing for their examination and detention for further inquiry without a warrant.  The detention authority under 8 U.S.C. §1225 is automatic and mandatory and therefore no warrant exists for this type of detention. "An applicant for admission who is arrested and **detained without a warrant** while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b) (2018)" *Matter of Q-Li,* 29 I&N Dec. 66 (BIA 2025) (Emphasis added).

37.  8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an immigration judge. See 8 U.S.C. § 1229(a).

Individuals in Section 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, see 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, see 8 U.S.C. § 1226(c).

38. This section requires a warrant because once the person has been in the U.S. for over two years, the government must have some probable cause to arrest that person and this must be spelled out in the warrant.  See, 8 U.S.C. § 1226(a).

39. The Court has broad, equitable authority under the habeas statute, 28 USC 2241, 2243 and the common law, to dispose of Petitioner's case as law and justice require, based on the facts and circumstances of this case, in order to remedy Petitioner's unlawful detention.

40. The Court should exercise this authority to grant Petitioner's habeas Corpus petition and to fashion any and all additional relief, necessary to effectuate Petitioner's Yony's expeditious release from unlawful detention. In the absence of such relief, Petitioner Yony and his family are suffering and will continue to suffer irreparable harm.

41. The Due Process Clause provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  In this case there has been absolutely no due process of law.  Consistent with the Due Process clause of the Fifth Amendment to the U.S. Constitution, ICE must release detainees where civil detention has become punitive and where release is the only

remedy to prevent this impermissible punishment.  Yony's detention is punitive in nature.

## VII.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

42. There is no applicable statute or rule that mandates administrative exhaustion. Whether to require exhaustion is thus within the district court's "sound judicial discretion." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted). *Island Creek Coal Co. v. Bryan,* 937 F.3d 738, 746 (6th Cir. 2009) The Sixth Circuit has not decided whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention. But even if a court would ordinarily enforce prudential exhaustion, it may still choose to waive such exhaustion. *Lopez-Campos*, 2025 WL 2496379, (E.D. Mich. Aug. 29,. 2025) at *4. For example, when the "legal question is fit for resolution and delay means hardship," a court may choose to decide the issues itself. *Shalala v. Ill. Council on Long Term Care ,Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also excuse exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

43. In this case, there are no administrative remedies to exhaust since the Respondents have already stated that mandatory detention applies in this case, and the Board has issued a precedent decision stating that people like the Petitioner are

12

subject to mandatory detention.  See, *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025).

44.  Yony faces significant hardship should the Court refrain from deciding the issue. Courts may waive exhaustion requirements when an administrative remedy is subject to "an unreasonable or indefinite timeline." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992).

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### VIOLATION OF DUE PROCESS
### FIFTH AMENDMENT OF THE US CONSTITUTION

45. Petitioners reallege the foregoing paragraphs as if set forth fully herein.

46.  The Fifth Amendment of the Constitution guarantees that civil detainees, including all immigrant detainees, may not be subjected to punishment. The federal government also violates substantive due process when it subjects civil detainees to cruel treatment and conditions of confinement that amount to punishment.

47. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001)

48. The Supreme Court has long made clear that when the government seeks to deprive an individual of a "particularly important individual interest[]," it must bear the burden of justifying this deprivation by clear and convincing evidence. *Addington v. Texas*, 441 U.S. 418, 424 (1979).  Yony was suddenly detained without explanation.  He has a significant interest at stake, and a "clear and convincing" evidence standard provides the appropriate level of procedural protection. *Id*. at 423.

49. To comport with substantive due process, civil immigration detention must bear a reasonable relationship with its two regulatory purposes— (1) to ensure the appearance of noncitizens at future hearings and (2) to prevent danger to the community pending the completion of removal. *Zadvydas*, 533 U.S. at 690-91.

50. The Respondents, without affording Yony due process, through their actions believe that they can detain Yony without access to request a bond from a court.  His detention has no reasonable relationship to the regulatory purposes of civil detention.  Yony has won his immigration case and will become a permanent resident.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF FOURTH AMENDMENT

51.  Petitioner realleges the foregoing paragraphs as if set forth fully herein.

52. The Fourth Amendment protection against "unreasonable searches and seizures" is a protection against "arrest without probable cause."  *Terry v. Ohio*,

392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *U.S. v. Avery*, 128 F.3d 974 (6th Cir. 1997)

## THIRD CLAIM FOR RELIEF
## VIOLATION OF THE
## IMMIGRATION AND NATIONALITY ACT

53. Petitioner realleges the foregoing paragraphs as if set forth fully herein.

54. 8 U.S.C.§ 1226(a) mandates that a person be provided a bond redetermination hearing before an immigration court.

55. Since Respondents adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected *Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE.

56. Even before ICE and the BIA introduced these nationwide policies, IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here. There, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

15

57. Subsequently, court after court, including in this district, has adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation. See, e.g., *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem,* No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug.

16

27, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); see also, e.g., *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

58. Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

59. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

60. The text of § 1226(a) also explicitly applies to people charged as being inadmissible, including those who entered without inspection. See 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by

17

default, such people are afforded a bond hearing under subsection (a). As the Rodriguez Vazquez court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez*, 779 F. Supp. 3d at 1257 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 400 (2010)); see also *Gomes*, 2025 WL 1869299, at *7.

61. 8 U.S.C. §1226(a), therefore, leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

62. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

63. Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

64. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds

18

of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

65. The application of § 1225(b)(2) to Petitioner mandates his continued unlawful detention and violates the INA and the U.S. Constitution. The Respondents have continuously deprived Yony of a bond hearing to which he is entitled to under the INA, even after he won his immigration case.

## VIII.  CONCLUSION

THEREFORE, the Petitioner respectfully requests that this Court:

a.      Issue a Writ of Habeas Corpus on the ground that the continued detention of Yony violates the Due Process Clause and order Yony's immediate release;

b.      In the alternative order that Respondent EOIR holds a bond hearing within 3 days;

c.      Find that the Respondents have acted in bad faith in violating the U.S. Constitution and the INA;

d.      Award Plaintiffs their costs and reasonable attorneys' fees in this action.

e.    Any other relief the Court deems appropriate.


Respectfully submitted:

_____s/Caridad Pastor_____                    Dated: November 26, 2025
Caridad Pastor C (P43551)
Pastor and Associates, P.C.
Attorneys for Petitioner
11 Broadway Suite 1005
New York, New York 10004
(248) 619-0065
carrie@pastorandassociates.com