United States District Court
Eastern District of Michigan

Yony Javier Zelaya Mendez,

     Petitioner,

v.

Kristi Noem, Secretary, U.S.
Department of Homeland Security;
Todd Lyons, Acting Director, U.S.
Immigration and Customs
Enforcement; Kevin Raycraft, Acting
Field Office Director of Enforcement
and Removal Operations, Detroit Field
Office, Immigration and Customs
Enforcement; and Pamela Bondi, U.S.
Attorney General;

     Respondents.

Civil No. 25-13818

Honorable Laurie J. Michelson
Mag. Judge Elizabeth A. Stafford

---

### Response to Petition for a Writ of Habeas Corpus

---

Respondents submit this response to petitioner's request for a writ of habeas corpus. (ECF No. 1). As described in the attached brief, respondents respectfully request that the Court deny the petition because petitioner's detention does not violate the constitution or federal law.

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

*/s/ Zak Toomey*
Zak Toomey (MO61618)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9617
zak.toomey@usdoj.gov

Dated: December 17, 2025

United States District Court
Eastern District of Michigan

Yony Javier Zelaya Mendez,

      Petitioner,

                            Civil No. 25-13818

v.

                            Honorable Laurie J. Michelson

Kristi Noem, Secretary, U.S.          Mag. Judge Elizabeth A. Stafford
Department of Homeland Security, et
al.,

      Respondents.

## Respondents' Brief in Support of Their Response to Petition for a Writ of Habeas Corpus

## Issues Presented

I.     Is petitioner's detention consistent with the due process clause when his detention is limited to a finite period, he has the right to appeal his detention administratively, and controlling law establishes that he is not due any more process under the Constitution?

II.    Should the Court require that petitioner exhaust his administrative remedies before pursuing this suit?

III.   Is petitioner properly detained while DHS appeals the immigration judges' grant of cancellation of removal when a valid regulation stays the effect of the immigration judge's order while the appeal is pending?

IV.   Is petitioner properly detained under 8 U.S.C. § 1225(b)(2)(A) when he unambiguously meets every element in the text of the statute and the structure and history of the statute support its application to petitioner?

# Table of Contents

Table of Authorities ............................................................................................. iii

Introduction ..........................................................................................................1

Background ...........................................................................................................1

Standard of Review ..............................................................................................3

Argument...............................................................................................................3

   I.   Petitioner's Detention Does Not Violate the Due Process Clause................3

   II.  The Court Should Require Administrative Exhaustion ................................5

   III. Petitioner is Properly Detained During the Appeal in His
       Immigration Case ......................................................................................6

   IV. Petitioner is properly detained under § 1225(b)(2) .....................................7

      A.   The text of § 1225(b)(2) supports petitioner's detention under the
          statute ................................................................................................8

      B.   The structure § 1225 supports petitioner's detention under the
          statute .............................................................................................13

         1.   The structure of § 1225(b)(2) demonstrates that it applies to
            petitioner .................................................................................13

         2.   Petitioner cannot import provisions related to arriving aliens into
            § 1225(b)(2) .............................................................................15

         3.   Section 1225(b)(2) is not redundant .................................................16

         4.   *Jennings* does not support petitioner's interpretation.......................19

      C.   The history of the statute supports petitioner's detention under §
          1225(b)(2) .......................................................................................20

         1.   The legislative history supports the agency's interpretation ............20

         2.   The agency's practice does not undermine its interpretation. ..........22

      D.   Petitioner's reliance on district court cases is unpersuasive.................24

Conclusion .........................................................................................................25

Certificate of Service .........................................................................................26

**Table of Authorities**

## Cases

*Al-Shabee v. Gonzales*, 188 F. App'x 333 (6th Cir. 2006) ........................................5

*Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025) ....................................15

*Barrios Sandoval v. Acuna*, No. 25-01467, 2025 WL 3048926
(W.D. La. Oct. 31, 2025) ...........................................................................................9

*Barton v. Barr*, 590 U.S. 222 (2020) ....................................................................17

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176 (2004) ...................................8, 24

*Biden v. Texas*, 597 U.S. 785 (2022) .............................................................. 22, 23

*Borden v. United States*, 593 U.S. 420 (2021)................................................. 15, 16

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020)........................................21

*Caminetti v. United States*, 242 U.S. 470 (1917).................................................13

*Camreta v. Greene*, 563 U.S. 692 (2011) .............................................................24

*Chavez v. Noem*, —F. Supp. 3d—, No. 25-02325, 2025 WL 2730228
(S.D. Cal. Sept. 24, 2025) ..........................................................................................9

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249 (1992) ....................................17

*Demore v. Kim*, 538 U.S. 510 (2003) .................................................................4, 14

*Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) ................... 4, 5, 14

*Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149 (2018)..........................................9

*Elia v. Gonzales*, 431 F.3d 268 (6th Cir. 2005).....................................................23

*Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021)....................................................24

*Garibay-Robledo v. Noem*, No. 25-177, 2025 WL 2638672
(N.D. Tex. Oct. 24, 2025) ..........................................................................................9

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995).......................................................22

*Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425 (6th Cir. 2012)................12

*Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018)..................................................3

*Jay v. Boyd*, 351 U.S. 345 (1956) .........................................................................13

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ........................................ 17, 18, 19, 20

*King v. Burwell*, 576 U.S. 473 (2015) ...................................................13

*Leary v. Daeschner*, 228 F.3d 729 (6th Cir. 2000)....................................3

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ..........................22

*Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379
　(E.D. Mich. Aug. 29, 2025) ............................................................25

*Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014)......................................16

*Martin v. United States*, 145 S. Ct. 1689 (2025) ...................................20

*Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025)................................ 22, 23

*Matter of Yajure Hurtado*, 29 I &N Dec. 216 (BIA 2025)........................ passim

*McGirt v. Oklahoma*, 591 U.S. 894 (2020) ...............................................8

*Mejia Olalde v. Noem*, No. 25-00168, 2025 WL 3131942
　(E.D. Mo. Nov. 10, 2025) .................................................................9

*Michigan Exp., Inc. v. United States*, 374 F.3d 424 (6th Cir. 2004) ..........23

*Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91 (2011)...........................19

*Monsalvo Velazquez v. Bondi*, No. 23-929, 2025 WL 1160894
　(U.S. Apr. 22, 2025).........................................................................6

*Nielsen v. Preap*, 586 U.S. 392 (2019) .................................................23

*Patel v. Bondi*, 131 F.4th 377 (6th Cir. 2025) .......................................24

*Pena v. Hyde*, No. 25-11983, 2025 WL 2108913 (D. Mass. July 28, 2025)............9

*Polselli v. Internal Revenue Serv.*, 598 U.S. 432 (2023) ..........................15

*Pulsifer v. United States*, 601 U.S. 124 (2024)................................. 15, 16

*Ramirez-Ortez v. Barr*, 782 F. App'x 318 (5th Cir. 2019) ........................6

*Scialabba v. Cuellar de Osorio*, 573 U.S. 41 (2014)................................16

*Shawnee Coal Co. v. Andrus*, 661 F.2d 1083 (6th Cir. 1981) ....................6

*Shearson v. Holder*, 725 F.3d 588 (6th Cir. 2013) ...................................5

*Shire v. Att'y Gen. United States*, 735 F. App'x 769 (3d Cir. 2018).........6

*Silva Oliveira v. Patterson*, No. 25-01463, 2025 WL 3095972

    (W.D. La. Nov. 4, 2025) ....................................................................9

*Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) ........................................21

*United States v. Martin*, 438 F.3d 621 (6th Cir. 2006) ...........................23

*Vargas Lopez v. Trump*, No. 25-526, 2025 WL 2780351

    (D. Neb. Sept. 30, 2025) ....................................................................9

*Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609 (1973)...............15

*Wilkinson v. Garland*, 601 U.S. 209 (2024) ........................................17

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ...........................................4, 14

**Statutes**

28 U.S.C. § 102 ....................................................................................2

28 U.S.C. § 2241 ..................................................................................3

8 U.S.C. § 1101(a)(13)........................................................................10

8 U.S.C. § 1101(a)(13)(A) ...............................................................8, 10

8 U.S.C. § 1182(a)(6)........................................................................1, 10

8 U.S.C. § 1182(a)(6)(A)(i ...............................................................12

8 U.S.C. § 1225 ....................................................... 12, 13, 15, 19

8 U.S.C. § 1225(a)(1)................................................................. passim

8 U.S.C. § 1225(a)(2)........................................................................13

8 U.S.C. § 1225(a)(3)........................................................................10

8 U.S.C. § 1225(a)(4)........................................................................10

8 U.S.C. § 1225(b)(1)................................................................. passim

8 U.S.C. § 1225(b)(1)(A)(i ...............................................................14

8 U.S.C. § 1225(b)(1)(A)(iii)(II)......................................................14

8 U.S.C. § 1225(b)(2)................................................................. passim

8 U.S.C. § 1225(b)(2)(A)............................................................ passim

8 U.S.C. § 1225(b)(2)(B) ...................................................................14

8 U.S.C. § 1225(b)(2)(C) ...................................................................14

8 U.S.C. § 1226 ........................................................................... 17, 19

8 U.S.C. § 1226(a) .................................................................... passim

8 U.S.C. § 1226(c) ................................................................ 17, 19, 20

8 U.S.C. § 1226(c)(1)(E) ....................................................................18

8 U.S.C. § 1227(a) ...................................................................... 17, 20

8 U.S.C. § 1229a ....................................................................... passim

8 U.S.C. § 1229a(c)(5) ........................................................................6

8 U.S.C. § 1229a(d) ..........................................................................11

8 U.S.C. § 1229b................................................................................11

8 U.S.C. § 1229b(b)(3)........................................................................11

8 U.S.C. § 1229c(a)(1) .......................................................................10

8 U.S.C. § 1252 .................................................................................25

8 U.S.C. § 1252(a)(5)...........................................................................2

8 U.S.C. § 1252(g) ...............................................................................2

## Other Authorities

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA),
Pub. L. No. 104-208, § 302, 110 Stat. 3009-546 .......................... 21, 22

Laken Riley Act, PL 119-1, 139 Stat 3 (Jan. 29, 2025).................................. 18, 19

## Regulations

8 C.F.R. § 1.2 ....................................................................................14

8 C.F.R. § 1003.1 ...............................................................................24

8 C.F.R. § 1003.14 ...............................................................................6

8 C.F.R. § 1003.3 .................................................................................6

8 C.F.R. § 1003.6 .................................................................................6

8 C.F.R. § 1003.6(a)..............................................................................6, 7

8 C.F.R. § 236.1(d)(3).............................................................................5

**Introduction**

Petitioner is a noncitizen who is currently detained by ICE while the agency appeals an immigration judge's order granting him cancellation of removal. Petitioner does not challenge the agency's decision to initiate removal proceedings against him or detain him in the first instance. Instead, petitioner only challenges the agency's decision to detain him under a statutory provision that does not entitle him to a bond hearing. The Court should reject this challenge for several reasons. First, the Court should reject petitioner's due process claim because he has received all process due under the Constitution. Second, the Court should require that petitioner exhaust administrative remedies before challenging his detention in this Court. Third, the Court should reject petitioner's argument that he must be released while the agency appeals the immigration judge's decision because a valid regulation stays the immigration judge's order while the appeal is pending. Finally, the text, structure, and history of 8 U.S.C. § 1225(b)(2) demonstrate that ICE properly detained petitioner under that provision.

**Background**

Petitioner Yony Javier Zelaya Mendez is a citizen of Honduras, who unlawfully entered the United States at an unknown time and location without being lawfully inspected or admitted. (Exhibit 1 – NTA). Immigration officials have charged him with inadmissibility under 8 U.S.C. § 1182(a)(6) because he unlawfully

1

entered the United States. (*Id.*).

On August 13, 2025, immigration officials arrested Zelaya Mendez. (Pet., ECF No. 1, PageID.2). On October 9, 2025, Zelaya Mendez appeared at a hearing in immigration court with his attorney. (IJ Order, ECF No. 1-1, PageID.21). At that hearing, the Immigration Judge (IJ) canceled Zelaya Mendez's removal. (*Id.* at PageID.22). On November 4, 2025, the Department of Homeland Security appealed the IJ's decision to cancel the removal, and that appeal is still pending. (Exhibit 2 – NOA). Zelaya Mendez is detained at North Lake Processing Center in Baldwin, Michigan. (Pet., ECF No. 1, PageID.6). Baldwin, Michigan, is in the Western District of Michigan. 28 U.S.C. § 102.

In the petition, Zelaya Mendez named several respondents including Kevin Raycraft, the Acting ICE Field Office Director, the Acting Director of ICE, the Secretary of the Department of Homeland Security, and the Attorney General. (*See* Pet., ECF No. 1, PageID.6). Petitioner does not challenge the agency's initiation of removal proceedings against him, nor could he. (*Id.* at PageID.19–20). Petitioner was not lawfully admitted, and he has no legal status unless and until the Board of Immigration Appeals rules in his favor. (*See id.,* at PageID.2). And, even if petitioner wished to challenge his removability, he could not do so in this Court because challenges to any aspect of removal proceedings must be filed in the Sixth Circuit in the first instance. *See* 8 U.S.C. §§ 1252(a)(5), (g); *Hamama v. Adducci*, 912 F.3d

869, 874 (6th Cir. 2018). Similarly, petitioner does not challenge the agency's initial decision to detain him. (*See* Pet., ECF No. 1, PageID.19–20). Petitioner argues that ICE did not have the authority to detain him under § 1225(b)(2), but concedes that ICE still would have had the lawful authority to detain him under a similar statute, 8 U.S.C. § 1226(a). (*See Id.* at PageID.19–20).

## Standard of Review

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or a federal law. 28 U.S.C. § 2241.

## Argument

First, the Court should reject petitioner's due process argument because he has received all process due under the Constitution. Second, the Court should require that petitioner exhaust administrative remedies. Third, the Court should reject petitioner's argument that he is entitled to release while the agency appeals the immigration judge's order. Finally, the Court should find that petitioner is properly detained under § 1225(b)(2).

## I.     Petitioner's Detention Does Not Violate the Due Process Clause

To succeed on a due process claim, a petitioner must show that they "have a property interest that entitles them to due process protection" and, if so, the "court must then determine 'what process is due.'" *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000). In the immigration context, the Supreme Court has frequently held that the process due under the constitution is coextensive with the removal

3

procedures provided by Congress, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–140 (2020), it has confirmed that statutory provisions denying bond during administrative removal proceedings do not violate the due process clause because those proceedings have a definite end point, *Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."), and it has held that even after a noncitizen is ordered removed and detention may have an indefinite end point, detention up to six months is presumptively valid under the due process clause, *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

Here, petitioner does not present a plausible due process claim. The agency's detention of petitioner under 8 U.S.C. § 1225(b)(2) is required by law that is binding on the agency. *See Matter of Yajure Hurtado*, 29 I &N Dec. 216 (BIA 2025). The agency does not violate a petitioner's due process rights by complying with controlling law. In addition, petitioner was given notice of the charges against him, he has access to counsel, he has attended a hearing with an immigration judge, he has the right to request bond and appeal any bond decision by the immigration court, and he has been detained by ICE for a matter of months. 8 U.S.C. § 1229a. The fact that he does not want to pursue the available administrative remedies does not make those procedures constitutionally deficient. *See Thuraissigiam*, 591 U.S. at 138–140. Instead, petitioner's only plausible challenge to his detention is that he is detained

under the wrong statute, which, even if true, would make his detention unlawful; it would not make it unconstitutional. *See id.*; *see also Al-Shabee v. Gonzales*, 188 F. App'x 333, 339 (6th Cir. 2006) ("Shabee's disagreement with the Immigration Judge's order, however, does not constitute a violation of the Due Process Clause."). Therefore, the Court should reject petitioner's due process claim.

## II.  The Court Should Require Administrative Exhaustion

When Congress has not imposed a statutory administrative exhaustion requirement, "sound judicial discretion governs whether or not exhaustion should be required." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quotations omitted). The exhaustion doctrine both allows agencies to "apply [their] special expertise in interpreting relevant statutes and promotes judicial efficiency." *Id.* (quotation omitted).

Here, the Court should require that petitioner exhaust administrative remedies before pursuing his claim in this court. Congress provided a robust administrative hearing and appeal process for noncitizens in removal proceedings that includes bond hearings, evidentiary hearings, motion practice, and appeals. *See* 8 U.S.C. § 1229a; 8 C.F.R. § 236.1(d)(3). However, the agency acknowledges that petitioner is ultimately unlikely to obtain the relief he seeks through the administrative process based on a recent decision by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I &N Dec. 216 (BIA 2025), which is binding on the agency and the

immigration courts, and which conclusively rejects petitioner's arguments in this case. *See Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981) (recognizing that administrative exhaustion may be excused if it would be futile).

### III. Petitioner is Properly Detained During the Appeal in His Immigration Case

Federal regulations grant immigration judges authority to issue orders of removal and to issue orders cancelling removal. *See* 8 C.F.R. § 1003.14. Those regulations also grant the parties in administrative immigration proceedings the right to appeal an immigration judge's order regarding a noncitizen's removal. *See* 8 U.S.C. § 1229a(c)(5); 8 C.F.R. § 1003.3. And other regulations stay an immigration judge's order regarding removal while the parties appeal. *See* 8 C.F.R. § 1003.6(a); *Monsalvo Velazquez v. Bondi*, No. 23-929, 2025 WL 1160894 (U.S. Apr. 22, 2025) ("By regulation, that appeal stayed the immigration judge's order.") (citing 8 C.F.R. § 1003.6).

Under the provision staying an immigration judge's order during an appeal, the agency cannot remove a petitioner who appeals an immigration judge's final order of removal. *See* 8 C.F.R. § 1003.6(a); *Shire v. Att'y Gen. United States*, 735 F. App'x 769, 776 (3d Cir. 2018) ("As Shire is not subject to removal while his appeal before the BIA remains pending, *see* 8 C.F.R. § 1003.6(a), we will deny the motion to stay as moot"); *see also Ramirez-Ortez v. Barr*, 782 F. App'x 318, 320 (5th Cir. 2019). And, conversely, a noncitizen lawfully held in detention pursuant to his or

her administrative removal proceedings is not entitled to release while the agency appeals an immigration judge's order cancelling removal. *See* 8 C.F.R. § 1003.6(a). That is because the same source that grants an immigration judge the power to issue orders regarding removal also renders that order inert during an appeal and maintains the pre-order status quo while the Board of Immigration Appeals considers the matter. *See* 8 C.F.R. § 1003.6(a).

Here, the immigration judge's order cancelling petitioner's removal does not render his detention unlawful. Although the immigration judge issued an order cancelling petitioner's removal, DHS has appealed that ruling and, under a valid regulation, the immigration judge's order is stayed pending the appeal. (*See* Exhibit 2 – NOA); 8 C.F.R. § 1003.6(a). And while petitioner argues that the immigration judge's order somehow alters the legality of his detention, he cites no statute, regulation, or case law indicating that he is entitled to release while the agency appeals the immigration judge's order. (*See* Pet., ECF No. 1). Accordingly, the lawfulness of petitioner's detention must be analyzed under the same authority that governed his detention prior to the immigration judge's order because, at this time, the immigration judge's order has no legal effect.

## IV. Petitioner is properly detained under § 1225(b)(2)

The Court should find that petitioner is properly detained under § 1225(b)(2) because he unambiguously meets every element in the text of the statute and, even

if the text were ambiguous, the structure and history of the statute support the agency's interpretation.

*A. The text of § 1225(b)(2) supports petitioner's detention under the statute*

A court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). That is, when the text of a statute is unambiguous in the context of the facts of the case, "[t]hat is the only 'step' [of interpretation] proper for a court of law." *McGirt v. Oklahoma*, 591 U.S. 894, 914 (2020).

The statute at issue in this case—8 U.S.C. § 1225(b)(2)(A)—is simple and unambiguous. Including its statutory definitions, it is only three sentences long. *See* 8 U.S.C. §§ 1101(a)(13)(A), 1225(a)(1), (b)(2)(A). It states:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).[1] The first relevant term is "applicant for admission," which is statutorily defined. *See* 8 U.S.C. § 1225(a)(1). The statute deems any noncitizen "present in the United States who has not been admitted" to be an "applicant for admission." 8 U.S.C. § 1225(a)(1). Thus, under the plain terms of the

---

[1] The first clause referencing subparagraphs (B) and (C) is not relevant in this case.

statute, all unadmitted noncitizens present in the United States are "applicants for admission," regardless of their proximity to the border, the length of time they have been present in the United States, or whether they ever had the subjective intent to properly apply for admission. *See id.* While this may seem like a counterintuitive way to define an "applicant for admission," "[w]hen a statute includes an explicit definition, [courts] must follow that definition, even if it varies from a term's ordinary meaning." *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quotation omitted). Accordingly, based on the plain text of the statute, petitioner is unambiguously an "applicant for admission" because he is a noncitizen, he was not admitted, and he was present in the United States when he was apprehended. *See also Mejia Olalde v. Noem*, No. 25-00168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025) (concluding that § 1225(b)(2) applies to noncitizens present in the United States under plain meaning of the statute); *Silva Oliveira v. Patterson*, No. 25-01463, 2025 WL 3095972 (W.D. La. Nov. 4, 2025) (same); *Barrios Sandoval v. Acuna*, No. 25-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025) (same); *Garibay-Robledo v. Noem*, No. 25-177, 2025 WL 2638672 (N.D. Tex. Oct. 24, 2025); *Vargas Lopez v. Trump*, No. 25-526, 2025 WL 2780351, at *4–9 (D. Neb. Sept. 30, 2025) (same); *Chavez v. Noem*, —F. Supp. 3d—, No. 25-02325, 2025 WL 2730228, at *4–5 (S.D. Cal. Sept. 24, 2025) (same); *Pena v. Hyde*, No. 25-11983, 2025 WL 2108913 (D. Mass. July 28, 2025) (same).

The next relevant portion of the statute is whether an examining immigration officer determined that petitioner was "seeking admission." *See* 8 U.S.C. § 1225(b)(2)(A). The statute defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Therefore, the inquiry is whether an immigration officer determined that petitioner was seeking a "lawful entry." *See id.* A noncitizen's previous unlawful *physical* entry has no bearing on this analysis. *See id.*

A "lawful entry" is important to a noncitizen for two reasons. First, a noncitizen cannot legally enter the United States without a lawful entry. *See* 8 U.S.C. §§ 1101(a)(13), 1225(a)(3). Second, a noncitizen cannot *remain* in the United States without a lawful entry because a noncitizen is removable if he did not enter lawfully. *See* 8 U.S.C. § 1182(a)(6). Indeed, the charge of removal against petitioner is based upon his unlawful entry. (*See* Exhibit 1 – NTA). So, unless petitioner obtains a lawful admission in the future, he will be subject to removal in perpetuity. *See* 8 U.S.C. §§ 1101(a)(13), 1182(a)(6).

The Act provides examples of noncitizens who are not "seeking admission." The first are those who withdraw their application for admission and "depart immediately from the United States." 8 U.S.C. § 1225(a)(4). The second are those who agree to voluntarily depart "in lieu of being subject to proceedings under § 1229a . . . or prior to the completion of such proceedings." 8 U.S.C. § 1229c(a)(1).

And, even in removal proceedings, a noncitizen can concede removability and accept removal, in which case they will no longer be "seeking admission." 8 U.S.C. § 1229a(d).

Noncitizens present in the United States who have not been lawfully admitted and who do not agree to immediately depart are seeking lawful entry and must be referred for removal proceedings under § 1229a. *See* 8 U.S.C. §§ 1225(a)(1), (b)(2)(A). In removal proceedings, if an unlawfully admitted noncitizen does not accept removal, he can seek a lawful admission. *See, e.g.*, 8 U.S.C. § 1229b. For instance, petitioner cannot plausibly challenge his inadmissibility, but he may apply to cancel his removal and adjust his status under 8 U.S.C. § 1229b. If he is successful, he will be granted lawful status and the agency "shall record the alien's lawful *admission* for permanent residence as of the date of the . . . cancellation of removal." 8 U.S.C. § 1229b(b)(3) (emphasis added). Accordingly, petitioner is "seeking admission" under § 1225(b)(2) because he is pursuing a lawful admission through his removal proceedings.

The Court should reject petitioner's argument that he is not "seeking admission" because it is not a reasonable interpretation of the text. According to petitioner, he chose to enter and remain in the United States unlawfully, therefore, he is not "seeking" a lawful entry. This interpretation is not reasonable because it ignores the fact that he has not agreed to immediately depart, so logically he must

11

be seeking to remain, which requires an "admission" *i.e.*, a lawful entry. 8 U.S.C. § 1182(a)(6)(A)(i). It also defies the legal presumption created by the definition of "applicant for admission," which characterizes all unlawfully present noncitizens as applying for admission until they are either removed or successfully obtain a lawful entry, regardless of their subjective intent. *See* 8 U.S.C. § 1225(a)(1). Further, it would reward petitioner for knowingly violating the law, entitle him to better treatment than a noncitizen who lawfully presented himself at a port of entry, and encourage others to enter unlawfully, which defies the intent reflected in the plain text of the statute. *See* 8 U.S.C. § 1225; *see also Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 432 (6th Cir. 2012) ("Interpretations of a statute which would produce absurd results are to be avoided . . . .") (citation omitted). Accordingly, petitioner's interpretation of "seeking admission" does not create an ambiguity in the statutory text because his proposed alternative is not reasonable.

The final textual requirement is that petitioner "be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Here, petitioner is not in expedited removal but rather has been placed in full removal proceedings where he will receive the benefits of the procedures (representation by counsel, motions, hearings, testimony, evidence, and appeals) provided in § 1229a. Therefore, he also meets this element in the text.

In sum, the text of § 1225(b)(2) unambiguously applies to petitioner. "Where

the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Caminetti v. United States*, 242 U.S. 470, 485 (1917). This principle applies, even if petitioner contends that the plain application of the statute would lead to a harsh result. *See Jay v. Boyd*, 351 U.S. 345, 357 (1956) (courts "must adopt the plain meaning of a statute, however severe the consequences."). Therefore, no further exercise in statutory interpretation is necessary or permissible in this case and the Court should conclude that petitioner's detention under § 1225(b)(2) is lawful.

*B. The structure § 1225 supports petitioner's detention under the statute*

If the plain language of a statute is ambiguous, a court may turn to the broader structure of the statute to determine its meaning. *See King v. Burwell*, 576 U.S. 473, 492 (2015). The structure of § 1225 demonstrates that petitioner is properly detained under § 1225(b)(2).

1. The structure of § 1225(b)(2) demonstrates that it applies to petitioner

Section 1225 addresses two types of unadmitted noncitizens: "arriving aliens" and "applicants for admission." *See* 8 U.S.C. § 1225(a)(1), (b)(1). The provisions for "arriving aliens" relate to "stowaways," "crewmen," noncitizens "arriving on land . . . from a foreign territory contiguous to the United States," and noncitizens present in the United States for less than two years. *See id.* §§ 1225(a)(2),

(b)(1)(A)(i), (b)(1)(A)(iii)(II), (b)(2)(B), (b)(2)(C). The term "arriving alien" is similarly defined by regulation as "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. These noncitizens "arriving" at an international port are not entitled to the procedural protections in the full removal proceedings described in § 1229a. *See* 8 U.S.C. § 1225(b)(1)(A)(i). Instead, because they only recently arrived, they are subject to "expedited" removal proceedings. *See id.*; *Thuraissigiam*, 591 U.S. at 140 (holding that diminished due process provided in expedited removal proceedings was constitutional for arriving aliens detained under § 1225(b)(1)).

Meanwhile, § 1225(b)(2) applies to all "other aliens" who are "present" in the United States without a lawful admission. *See* 8 U.S.C. §§ 1225(a)(1), (b)(2)(A). Those noncitizens, who may have been present for a long period of time and may no longer be near an international border, may be entitled to greater due process than "arriving aliens." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Therefore, the statute provides them the maximum procedural protections available under the nation's immigration laws, which satisfies the due process clause. *See* 8 U.S.C. § 1225(b)(2)(A) (requiring detention during full removal proceedings under § 1229a; *Demore v. Kim*, 538 U.S. 510, 523 (2003) (holding that mandatory detention of noncitizen who was long-term U.S. resident during removal proceedings complied with Due Process Clause).

Given this, the structure of § 1225 supports the conclusion that petitioner is properly detained under § 1225(b)(2). Congress used different words to differentiate recently arrived noncitizens from "applicants for admission" and gave each category of noncitizens different procedural protections, *see* 8 U.S.C. §§ 1225(a)(1), (b)(1), (b)(2), which demonstrates that Congress intended the provisions to apply to different categories of noncitizens and results in a harmonious reading of the statute. *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("different terms usually have different meanings."); *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 631–32 (1973) ("It is well established that our task in interpreting separate provisions of a single Act is to give the Act 'the most harmonious, comprehensive meaning possible' in light of the legislative policy and purpose."). Therefore, the structure of the statute also supports petitioner's detention under § 1225(b)(2).

   2.  Petitioner cannot import provisions related to arriving aliens into § 1225(b)(2)

"A court does not get to delete inconvenient language and insert convenient language to yield the court's preferred meaning." *Borden v. United States*, 593 U.S. 420, 436 (2021); *see also Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 309 (2025). And when a statute defines two groups and assigns them different treatment, the Court must interpret the statute to give effect to the statutory distinction. *See Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 441 (2023) ("We ordinarily aim to "giv[e] effect to every clause and word of a statute."); *see also Scialabba v. Cuellar*

*de Osorio*, 573 U.S. 41, 57 (2014) (holding that statute required different treatment for principal and derivative immigration beneficiaries).

The Court should reject petitioner's argument that it should alter § 1225(b)(2) to include the limitations relevant to arriving aliens, so that it no longer applies to him. As noted above, his argument has no support in the text of the statute, which does not limit its application to the border or to recently arrived noncitizens and, instead, explicitly includes noncitizens already present in the United States like petitioner. *See* 8 U.S.C. § 1225(a)(1), (b)(2). And, the Court is not free to disregard the clear distinction between recently arrived noncitizens ("arriving aliens") and those like petitioner who were successfully able to evade apprehension for many years ("applicants for admission"). *Borden*, 593 U.S. at 436; *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014) ("Given that the drafters did not adopt that alternative, the natural implication is that they did not intend [it]."). Moreover, his reading of the statute, which would collapse the definitions of arriving aliens and applicants for admission, would effectively erase Congress's definition of "applicant for admission" and render half of the statute meaningless, which no canon of statutory interpretation would allow. *See Pulsifer*, 601 U.S. at 143 (rejecting interpretation of statute that "render[s] an entire subparagraph meaningless").

3. Section 1225(b)(2) is not redundant

"Redundancies across statutes are not unusual events in drafting, and so long

16

as there is no 'positive repugnancy' between two laws, a court must give effect to both." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citation omitted); *Barton v. Barr*, 590 U.S. 222, 239 (2020) ("redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure . . ."); *see also Jennings v. Rodriguez*, 583 U.S. 281, 305–06 (2018) (rejecting the argument that the scope of 8 U.S.C. § 1226(c) must be limited because it overlapped with a provision of the Patriot Act).

Here, there is no "positive repugnancy" between § 1225(b)(2) and § 1226(a) or the Laken Riley Act. Section 1226(a) is similar to § 1225(b)(2), but it reaches noncitizens that are not covered by § 1225(b)(2). For instance, some noncitizens lawfully enter the United States on a visa but then overstay the visa. *See, e.g.*, 8 U.S.C. § 1227(a); *Wilkinson v. Garland*, 601 U.S. 209, 213 (2024). Noncitizens who overstay a visa do not fall within § 1225(b)(2) because they were admitted and inspected before entering the United States. *See* 8 U.S.C. §§ 1225(a)(1), 1227(a). However, noncitizens who overstay a visa may be detained under § 1226(a). *See* 8 U.S.C. § 1226(a). Similarly, some noncitizens have their lawful status revoked when they commit certain crimes. *See* 8 U.S.C. § 1227(a); *Jennings*, 583 U.S. at 289–90. Those noncitizens usually cannot be detained under § 1225(b)(2), but they can be detained under § 1226. *See id.*

Further, while some noncitizens may facially fall within the scope of both

statutes, the statutes do not overlap at all in practice. An "applicant for admission" must be detained under § 1225(b)(2) and cannot be detained under § 1226(a). *See* 8 U.S.C. § 1225(b)(2)(A); *Jennings*, 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded."). This is because § 1225(b)(2) requires mandatory detention for noncitizens who fall within its terms until the conclusion of their administrative proceedings and detaining a noncitizen under § 1226(a), which allows release on bond, would nullify the mandatory detention required by § 1225(b)(2). *See* 8 U.S.C. § 1225(b)(2)(A); *Jennings*, 583 U.S. at 300. Therefore, § 1226(a) and § 1225(b)(2) are not redundant because § 1225(b)(2) always takes priority when it applies. *See Jennings*, 583 U.S. at 297; *Matter of Yajure Hurtado*, 29 I &N Dec. at 220.

Similarly, § 1225(b)(2)'s overlap with the Laken Riley Act is not "positively repugnant." Congress enacted the Laken Riley Act in January 2025 to prevent noncitizens with criminal records from committing additional crimes. *See* Laken Riley Act, PL 119-1, 139 Stat 3 (Jan. 29, 2025). Consistent with that purpose, under the Laken Riley Act, if an unadmitted noncitizen has committed certain crimes, the agency must detain them during their administrative removal proceedings. *See* 8 U.S.C. § 1226(c)(1)(E). According to petitioner, he has not committed any of the crimes listed in the Laken Riley Act, therefore, it does not apply to him. (*See* Pet.,

ECF No. 1). Therefore, the Laken Riley Act does is not redundant with § 1225(b)(2). And, in any event, as noted above, petitioner's interpretation would eviscerate all of the provisions in § 1225 relating to arriving aliens, so the specter of a potential redundancy with § 1226(c) cannot support his attempt to avoid the plain application of the statute. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 106 (2011) ("the canon against superfluity assists only where a competing interpretation gives effect 'to every clause and word of a statute.'"). Therefore, the Court should reject petitioner's argument that § 1225(b)(2) does not apply to him because it could be redundant with other statutes enacted at different times for different reasons and which do not actually apply to petitioner.

4. *Jennings* does not support petitioner's interpretation

Petitioner relies on *Jennings* to argue that § 1225(b)(2) only applies to noncitizens at the border, but *Jennings* does not support that argument. In *Jennings*, the Supreme Court considered whether three statutes mandating detention during administrative proceedings—8 U.S.C. §§ 1225(b)(1), 1225(b)(2), and § 1226(c)— allowed detention without a bond hearing. *See Jennings*, 583 U.S. at 291. In describing § 1225(b)(2), the Court characterized it as a broad "catchall" provision that applied to "applicants for admission" or "aliens seeking admission," which are the exact words used in § 1225(b)(2). *See id.* at 287, 297. The Court further characterized § 1226 as applying to noncitizens "present" in the United States but

19

made it clear that this category of noncitizens only included those that were admitted (unlike petitioner, who was not admitted). *See Jennings*, 583 U.S. at 288 (citing only § 1227(a), which only applies to noncitizens "in and admitted to the United States"). Ultimately, the Court concluded that § 1225(b)(1), § 1225(b)(2), and § 1226(c) mandated detention without parole during administrative immigration proceedings because the plain text of the statutes did not permit release on bond during administrative proceedings. *See Jennings*, 583 U.S. at 302–303. Therefore, *Jennings* does not add any meaningful information about the scope of § 1225(b)(2)(A) because *Jennings* was only interested in its effect, not the precise contours of who fell within each statute. *See id.* at 287, 297. And it certainly did not hold that noncitizens like petitioner were beyond the scope of § 1225(b)(2) or that the statute only applied at the border. *See id.*

C. *The history of the statute supports petitioner's detention under §
   1225(b)(2)*

"Legislative history is not the law" and "no amount of guesswork about the purposes behind legislation can displace what the law's terms clearly direct." *Martin v. United States*, 145 S. Ct. 1689, 1699–700 (2025). Nevertheless, even if the Court considered the legislative history or the agency's historical practice it would not support petitioner's argument.

1. The legislative history supports the agency's interpretation

When a statute is ambiguous, courts may consider relevant legislative history,

but even when legislative history is consulted it "is meant to clear up ambiguity, not create it." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 674 (2020). The only remotely ambiguous term in § 1225(b)(2) is "seeking admission" and there does not appear to be any relevant legislative history related to that term. However, the statute's general legislative history supports the agency's application of the statute.

Section 1225(b)(2)(A) was added to the Immigration and Nationality Act as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, § 302, 110 Stat. 3009-546. Congress enacted IIRIRA to eliminate "an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc); *see also Matter of Yajure Hurtado*, 29 I &N 216, 223–25 (BIA 2025). Therefore, IIRIRA created the legal fiction that noncitizens who had already entered the United States illegally were deemed "applicants for admission" and treated as if they were still on the threshold. *See Torres*, 976 F.3d at 928; *Matter of Yajure Hurtado*, 29 I &N at 223–25. This legal fiction was intended to deter individuals like petitioner from unlawfully entering the United States and to level the playing field between noncitizens who properly applied for entry and those who knowingly violated the law. *See Torres*, 976 F.3d at 928; *Matter of Yajure Hurtado*, 29 I &N at 223–25.

This legislative purpose is consistent with applying § 1225(b)(2) to petitioner

because it would treat him for legal purposes as if he were still at the border, even though he has, in fact, physically entered the country. And petitioner does not cite any evidence from IIRIRA's legislative history prior to its enactment that specifically or even generally supports his argument that he is beyond the scope of § 1225(b)(2). *Gustafson v. Alloyd Co.*, 513 U.S. 561, 579 (1995) ("Material not available to the lawmakers is not considered . . . to be legislative history.").

2. The agency's practice does not undermine its interpretation.

When interpreting an ambiguous statute relating to an agency's statutory authority, courts "must exercise their independent judgment" and they are not bound by the agency's practice. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). Even if it were, there is no evidence indicating that the agency interpreted the scope of § 1225(b)(2) differently in the past, although it has recently changed its interpretation regarding its discretion to apply it. Prior to May 2025, the agency believed it had discretion to detain noncitizens like petitioner under either § 1225(b)(2) or under § 1226(a) and primarily detained noncitizens like him under § 1226(a). *See Biden v. Texas*, 597 U.S. 785, 804 n. 5 (2022) ("We need not and do not decide whether the detention requirement in section 1225(b)(2)(A) is subject to principles of law enforcement discretion, as the Government argues."). However, in May 2025, the Board of Immigration Appeals concluded that noncitizens who fall within the scope of 8 U.S.C. § 1225(b)(1) (arriving aliens) must be detained under

that section and are "ineligible for any subsequent release on bond under . . . § 1226(a)." *See Matter of Q. Li*, 29 I. & N. Dec. 66, 69 (BIA 2025). Because the BIA's decision in *Matter of Q. Li* was binding on the agency and would naturally extend to § 1225(b)(2), the agency issued a new policy instructing its employees to comply with the new authority. Neither *Matter of Q. Li* nor the agency's new policy indicates that it changes the agency's interpretation of the scope of § 1225(b)(2) (*i.e.*, who falls within the statute). Instead, the agency has interpreted § 1225(b)(2) to apply to noncitizens like petitioner for several years. *See Biden*, 597 U.S. at 804 n. 5.

In addition, even if ICE's reliance on § 1225(b)(2) were entirely new, petitioner could not prevent immigration officials from using their valid statutory authority simply because they pursued a different path in the past. A federal agency is entitled to a presumption that it acts in good faith and in accordance with law. *See United States v. Martin*, 438 F.3d 621, 634 (6th Cir. 2006). And a party generally cannot estop the government from changing its legal position without proving "affirmative misconduct," *see Michigan Exp., Inc. v. United States*, 374 F.3d 424, 427–28 (6th Cir. 2004), and it is doubtful that the government may *ever* be estopped in the immigration context, *see Nielsen v. Preap*, 586 U.S. 392, 411–14 (2019); *Elia v. Gonzales*, 431 F.3d 268, 276 (6th Cir. 2005). None of the evidence in this case could meet that high standard. Therefore, petitioner's arguments regarding ICE's recent change in policy should have no bearing on the analysis in this case.

*D. Petitioner's reliance on district court cases is unpersuasive*

Under controlling law, courts must apply the plain text of a statute unless a party can identify an ambiguity requiring additional analysis. *See BedRoc Ltd.*, 541 U.S. at 183. To resolve statutory ambiguity, courts must apply the recognized canons of statutory construction to resolve the dispute. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 404 n.5 (2021). District courts cannot avoid this process by relying on the holdings of district court cases, which are not precedential. *See id.*; *Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (citation omitted).

Further, if the Court turns to persuasive authority, the Court should grant the BIA's decision in *Yajure Hurtado* more weight than the district court opinions on this issue. The Sixth Circuit routinely affirms the BIA's rulings on complex matters of immigration law and this Court should give the BIA's reasoning the same thoughtful consideration as the Sixth Circuit. *See, e.g.*, *Patel v. Bondi*, 131 F.4th 377, 380 (6th Cir. 2025). And there is no reason to believe that the BIA's decision in *Yajure Hurtado* is anything other than the reasoned opinion of three of the nation's leading experts on immigration law, despite petitioner's baseless attempt to insinuate that it was somehow issued for an improper motive. *See* 8 C.F.R. § 1003.1 ("Board members shall exercise their independent judgment . . .").

In contrast, while the district court opinions were issued by thoughtful jurists, federal district courts have had limited experience in immigration law since 2005, when Congress channeled most immigration disputes to the courts of appeals, *see* 8 U.S.C. § 1252, and many of the district court opinions on this issue were argued and decided on an expedited bases and, therefore, contain errors, such as incorrect quotations of the statutory text, *see Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) (quoting § 1225(b)(2)(A) as containing the phrase "inspection and removal of arriving aliens," when that phrase does not appear in the text), which diminishes their value as persuasive authority.

## Conclusion

Respondents respectfully request that the Court deny petitioner's petition for a writ of habeas corpus because he is not detained in violation of federal law or the Constitution.

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

*/s/ Zak Toomey*
Zak Toomey (MO61618)
Assistant U.S. Attorney
211 W. Fort Street, Ste. 2001
Detroit, Michigan 48226
(313) 226-9617
Date: December 17, 2025          zak.toomey@usdoj.gov

## Certificate of Service

I hereby certify that on December 17, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

/s/ Zak Toomey
**Zak Toomey**
Assistant U.S. Attorney